# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PHILADELPHIA HOUSING AUTHORITY, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | |
| STA PAINTING COMPANY, INC., et al., | : | No. 10-1511 |
| Defendants. | : | |

## MEMORANDUM ON SUMMARY JUDGMENT

**Baylson, J.**                                                                                **December 17, 2010**

STA Painting Company, Inc. ("STA") filed suit against Philadelphia Housing Authority ("PHA") in Pennsylvania state court seeking $140,000 in unpaid fees for services rendered. After an internal investigation, PHA admitted it owed $132,000, but also discovered that STA owes back taxes to the Internal Revenue Service ("IRS"). PHA subsequently filed a state interpleader action identifying the United States as a party in interest. The United States then removed the matter to this Court pursuant to 28 U.S.C. § 1442 and § 1444.

Presently before the Court are the United States's Motion for Summary Judgment (ECF No. 10), PHA's Motion to Pay Funds Into Court and for Dismissal of All Claims (ECF No. 11), and STA's Cross-Motion for Summary Judgment (ECF No. 18). After a review of the parties' briefing and the record, and for the following reasons, the United States's Motion will be **granted**, PHA's Motion will be **granted** in part and **denied** in part as moot, and STA's Cross-Motion will be **denied**.

**I.**     **Factual and Procedural Background**

The following facts are derived primarily from STA's complaint filed in the Philadelphia Court of Common Pleas, STA's answer to PHA's interpleader, and the exhibits attached thereto.

In November 2009, STA filed a breach of contract action against PHA in the Philadelphia Court of Common Pleas. STA claimed it entered into a services contract with PHA. PHA was supposed to make payment "monthly and upon receipt and approval of an itemized invoice." (ECF No. 15, Ex. A ¶ 2.) STA submitted the invoices required for payment. (E.g., ECF No. 15, Exs. C-G.) PHA failed to pay, so STA filed suit. (ECF No. 1, Ex. A.)

PHA, not disputing the debt but asserting that the United States had an interest in the funds, filed an interpleader action pursuant to Pennsylvania Rules of Civil Procedure 2301 et seq., in the Court of Common Pleas and served the United States.

The IRS had assessed against STA federal employment taxes for several quarters between 2000 and 2003. (ECF No. 10-3, Decl. of Perry Shumsky ¶ 4.) By operation of law, this assessment established a lien against assets belonging to STA. Because STA failed to pay these assessments, and in light of the services contract, the IRS served on PHA a notice of levy on October 21, 2008. (ECF No. 10, Ex. 103.) STA subsequently disclosed tax deficiencies through 2009. (ECF No. 18.) On February 4, 2009, the IRS issued a final demand for payment to PHA, to which PHA responded that it had not received the levy notice. (ECF No. 1, Ex. B ¶¶ 4-5.) But PHA had previously acknowledged receipt of the notice in an October 31, 2008 letter to STA. (ECF No. 15, Ex. K.) Despite this acknowledgment, PHA did not – and still has not – forwarded the funds to the IRS, notwithstanding the IRS lien and levy.

The Court of Common Pleas granted interpleader, and the United States removed the matter to this Court asserting federal subject matter jurisdiction based on 28 U.S.C. § 2410.

(ECF No. 1.) The United States then answered PHA's petition for interpleader, asserting a counter-claim against PHA to enforce the levy (ECF No. 4), and a cross-claim against STA to foreclose the lien (ECF No. 7). In February 2010, counsel for STA informed the IRS that he was "involved with PHA in settling [STA's] lawsuit against [PHA and his] intention is to resolve and have all monies paid to [the IRS]." (ECF No. 26, Ex. A.)

The United States moved for summary judgment on its counter- and cross-claims. (ECF No. 10.)

PHA then filed its Motion, seeking permission to pay the disputed funds into this Court and dismissal. (ECF No. 11.) In April 2010, counsel for PHA informed STA that although it had reviewed STA's claims and acknowledged PHA owed $132,000 for services rendered, it would not forward payment in light of the IRS's levy. (ECF No. 15, Ex. N.)

STA answered PHA's interpleader (ECF No. 15) and filed a Cross-Motion for Summary Judgment seeking the right to use the funds to offset of its most recent tax deficiencies (ECF No. 18).

## II. Jurisdiction and Standard of Review

### 1. Jurisdiction

The United States removed PHA's state interpleader action pursuant to 28 U.S.C. § 1442 and § 1444, asserting the Court has jurisdiction under 28 U.S.C. § 2410. In removal cases, subject matter jurisdiction is determined from the face of the complaint and on the basis of the state court record at the time the removal notice is filed. Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa., 605 F.2d 119, 124 (3d Cir. 1979). An action is removable only if the district court would have original jurisdiction over the claims in the suit. Jefferson County v. Acker, 527

U.S. 423, 430 (1999); see 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant or defendants . . . .").

There are two means of bringing an interpleader action in federal court – under 28 U.S.C. § 1335 or pursuant to Federal Rule of Civil Procedure 22. Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007). In this case, the United States does not assert jurisdiction pursuant to § 1335. Because the United States has no citizenship for purposes of § 1335, this statute does not apply. See Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm., 49 F.2d 1325, 1328 (9th Cir. 1974).

The other means for filing interpleader, Rule 22(a), which permits a party to institute an interpleader action when exposed to double or multiple liability, does not confer federal jurisdiction. Price, 501 F.3d at 275. Rule 22 is "no more than a procedural device; the plaintiff must plead and prove an independent basis for subject matter jurisdiction." Id.

The Court requested supplemental briefing from the parties regarding its jurisdiction over the removed interpleader action. This Court concludes it has subject matter jurisdiction in this case because the interpleader action implicates a substantial question of federal law, creating jurisdiction under 28 U.S.C. § 1331.[1] See id. at 275-76. Therefore, the Court need not address the other bases of jurisdiction the parties identified.

"Federal question jurisdiction exists when the plaintiff's well-pleaded complaint

---

[1] The Court concludes that the United States's asserted basis for jurisdiction, 28 U.S.C. § 2410, only waives sovereign immunity and authorizes suit, but does not establish federal jurisdiction. See Hudson County Bd. of Chosen Freeholders v. Morales, 581 F.2d 379, 383-84 (3d Cir. 1978).

establishes that 'federal law creates the cause of action.'" Id. at 276 (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)). In the interpleader context, some courts have construed this to mean that federal courts may exercise jurisdiction over interpleader actions that do not state a federal question on the face of the complaint, provided a stakeholder's right to relief necessarily depends on resolution of a substantial question of federal law. Commercial Nat'l Bank of Chi. v. Demos, 18 F.3d 485, 488 (7th Cir. 1994) (identifying other circuits adopting same position). Although the Third Circuit has not yet adopted this position, see Metro, 501 F.3d at 277 n.4, at least one district court in this Circuit has followed the reasoning, Allstate Settlement Corp. v. United States, No. 07-5123, 2008 WL 2221897, at *4 (E.D. Pa. May 28, 2008) (Buckwalter, S.J.).

In Demos, the Seventh Circuit declined to exercise jurisdiction because the stakeholders did not actually dispute the validity or amount of the United States's lien and, therefore, there was no federal question for the court to resolve. 18 F.3d at 489. In this case, although STA does not dispute its overall liability to the United States, it does dispute the validity of the United States's levy and, by implication, the amount of the lien. Thus, the validity of the United States's levy necessarily raises a substantial question of federal law over which this Court exercises jurisdiction.

Venue is proper pursuant to § 1441(a).

**2. Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. Id. at 255. The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor.

## III. Parties' Contentions

The parties do not dispute that the United States is entitled to the $132,000 which PHA owes STA. (See ECF No. 18 ("STA . . . agrees that the $132,000.00 . . . should be paid directly to the United States.").)

The United States asserts that STA owes back taxes, which are the subject of a federal tax lien, and the United States asserts that it issued a levy for a portion of those back taxes. A federal tax lien arises when a taxpayer neglects or refuses to pay a tax liability. The United States can enforce the lien by filing a lien foreclosure suit or issuing a levy. If the Government issues a levy, it only attaches to property possessed or obligations existing at the time the levy is served. In contrast, a lien covers all property existing before and acquired after the date the lien arises.

In this case, there is no dispute that STA had performed $104,000 worth of services under its contract with PHA by the date the United States served the levy on PHA. The United States contends that this $104,000 is therefore subject to the levy. The United States argues the remaining $28,000 is subject to a tax lien. (ECF No. 10-1 at 5-7.)

STA argues that the levy attached to nothing because its right to payment was not fixed and determinable as of the date the United States served the levy. Therefore, STA contends that

the United States could not levy against $104,000 and the entire $132,000 is subject only to a federal tax lien. (ECF No. 18 at 2-3.) This distinction is important for STA because it preserves its argument that it has a right to direct allocation of the funds to its most recent tax deficiencies. The United States argues allocation is within its sole discretion. (ECF No. 21 at 4-6.) The United States also argues that this Court lacks jurisdiction to declare STA's legal rights with respect to federal taxes. (U.S. Letter Br. at 3-4 (Oct. 20, 2010).)

The United States argues that its levy is valid because at the time it was issued, PHA had a fixed and determinable obligation to pay STA $104,000 pursuant to the services contract. (ECF No. 21 at 3-4.) STA counters that PHA's obligation was not fixed as of October 21, 2008 because PHA had not yet approved STA's invoices, which was the final condition prior to payment. (ECF No. 18 at 2.)

PHA takes no position on these issues. Instead, PHA asks this Court to excuse its failure to comply with the United States's levy, allow PHA to deposit the funds with the Court, and dismiss it from the case. (ECF Nos. 11, 14.)

## IV. Issues Presented

1. Is the United States entitled to levy on PHA to satisfy its lien as to STA's assets?
2. If so, can STA determine how to allocate the payment to the IRS against STA's back taxes, or does the United States have complete discretion regarding how to allocate the funds?

## V. Discussion

### A. There is No Dispute Regarding the Validity of the Lien

A federal tax lien arises when, after notice and demand, the taxpayer neglects or refuses

to pay its tax liability. 26 U.S.C. § 6321. A federal tax lien arises at the time the assessment is made, 26 U.S.C. § 6322, and attaches to all property and rights to property belonging to the taxpayer at any time during the period of the lien, including any property or property rights acquired by the taxpayer after the lien arises, 26 C.F.R. § 301.6321-1. Section 6321's language, "all property and rights to property," is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer may have. United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-20 (1985).

Neither STA nor PHA disputes the validity of the United States's lien or the United States's interest in or right to the funds due and owing from PHA. The United States issued assessments against STA for back taxes dating from 2000, and STA's failure to pay gave rise to the lien. The lien applies to STA' property rights, including the $132,000 due and owing from PHA. Therefore, the United States's Motion (ECF No. 10) to foreclose its lien will be granted.

The dispute in this case relates to the effect of the levy by the IRS served on PHA, which implicates how much of the funds is subject to levy and how much is subject to the lien.

### B. Did the Levy Attach to the Lien?

A lien against a taxpayer is not self-executing; rather, the United States must select between two enforcement alternatives: (1) a 26 U.S.C. § 7403 lien foreclosure suit, or (2) a § 6331 administrative levy. V.I. Bureau of Internal Revenue v. Chase Manhattan Bank, 312 F.3d 131, 136 (3d Cir. 2002). A lien foreclosure suit is a plenary action in which the court adjudicates all matters involved and finally determines the merits of all claims to and liens on the property. Nat'l Bank of Commerce, 472 U.S. at 720. The § 6331 administrative levy is a provisional remedy which does not determine priority interests until after the levy is made. Chase

Manhattan, 312 F.3d at 136; see also Lanier v. Wachovia Bank, No. 09-4566, 2010 WL 1141267, at *3 n.4 (E.D. Pa. Mar. 24, 2010) (Yohn, J.) ("The constitutionality of the administrative levy 'has long been settled.'" (quoting Phillips v. Comm'r, 283 U.S. 589, 595 (1931))).

Section 6331's language is extremely broad, covering "all property and rights to property" owned by the taxpayer. Chase Manhattan, 312 F.3d at 137. Therefore, courts must liberally identify property rights, which are created by state law. Id. Although state law determines the nature of the legal interest the taxpayer has in property, federal law assigns consequences to state law rights.[2] Id. The United States's right to levy property extends only to the taxpayer's property – the United States steps into the taxpayer's shoes and acquires whatever rights the taxpayer possesses. Id.

Consequently, a levy only attaches to property possessed and obligations existing at the time the United States serves notice of the levy.[3] Resolution Trust Corp. v. Gill, 960 F.2d 336, 341 (3d Cir. 1992); 26 C.F.R. § 301.6331-1(a). Obligations "exist" when the liability of the obligor is "fixed and determinable" although the taxpayer's right to receive payment thereof is deferred until a later date. 26 C.F.R. § 301.6331-1(a); see also Lanier, 2010 WL 1141267, at *4

---

[2] In Pennsylvania, the right to payment under a contract depends on performance. Boise Cascade Corp. v. East Stroudsburg Sav. Ass'n, 446 A.2d 614, 616 (Pa. Super. Ct. 1982); Biofeedback Group v. State Farm Mut. Auto. Ins. Co., 31 Phila. 106, 109 (Phila. Ct. Com. Pl. 1996) ("A right to payment only accrues upon performance.").

[3] The United States satisfies its duty to provide notice by sending notice to the last known address, regardless of whether it is actually received. Lopez v. United States, No. 92-2089, 1993 WL 151877, at *3 (W.D. Pa. Mar. 22, 1993); 26 U.S.C. § 6331(d)(2). Moreover, an unsupported assertion by a third party that it did not receive statutorily-required notice is insufficient to affirmatively establish notice was not sent. See Lopez, 1993 WL 151877, at *3.

n.5 (noting that although treasury regulations are not the law, "if reasonable, [they] are accepted or deferred to by the courts because they are made by the agency Congress has entrusted with carrying out its purpose") (quotation marks and alterations omitted).  A levy is made on the date on which notice is served.  26 U.S.C. § 6502(b).

In United States v. Hemmen, the Ninth Circuit analogized "fixed and determinable" to the obligation of a party to an ordinary contract with an executory duty to pay for completed performance.  51 F.3d 883, 890 (9th Cir. 1995).  To avoid the label of "fixed and determinable," the Ninth Circuit concluded that the property rights at issue must be materially distinguishable from such an obligation.  Id.  The primary focus is on whether the third party's obligation to pay was fixed after the underlying performance – if the beneficial act giving rise to the benefits is completed before the levy is issued, the benefits are subject to the levy.  Id.  Notably, it is the liability which must be fixed, not the amount; so long as the events which gave rise to the obligation have occurred, and the amount of the obligation is capable of being determined in the future, the obligation is fixed and determinable.  United States v. Antonio, No. 86-1053, 1991 WL 253021, at *6 n.2 (D. Haw. Sept. 24, 1991).

### C. Was PHA's Debt to STA Fixed and Determinable, and Why Relevant?

Pursuant to the agreement between STA and PHA, "payment will be made monthly and upon receipt and approval of an itemized invoice."  (ECF No. 15, Ex. A.)  STA does not dispute that it completed the work, that it delivered the invoices, or that the value of the work as of October 21, 2008 was $104,000.  (See ECF No. 26 at 2 (stating $132,000 is comprised, in part, of $104,000 for work completed before October 21, 2008).)  Rather, STA argues that the obligation was not "fixed and determinable" because PHA had not yet approved the invoices.

The only action remaining under the contract was approval and payment, both of which constituted conduct only PHA could perform. STA had completed its services, the beneficial act had been rendered, and all that remained was payment. This case falls squarely within the Ninth Circuit's hypothetical. See Hemmen, 51 F.3d at 890 (likening "fixed and determinable" to obligation of a party to an ordinary contract with an executory duty to pay for completed performance). Therefore, the levy by the IRS served on PHA attached to the $104,000 PHA owed to STA as of October 21, 2008, and the United States is entitled to judgment as a matter of law. The United States's Motion (ECF No. 10) to enforce its levy will be granted. As discussed below, this conclusion impacts STA's argument that it can direct allocation of the funds to its most recent tax deficiencies.

### D. Is STA's Payment Voluntary (i.e. Prompt), and Why Relevant?

STA wants the right to direct allocation of the $132,000 to improve its chances of securing an installment plan with the United States for payment of the remainder of its back taxes. STA also complains about the IRS's denial of its proposed installment agreements to pay its remaining deficiencies.[4]

---

[4] The Court lacks jurisdiction to address the denial of the proposed installment agreements. See Asemani v. IRS, 163 F. App'x 102, 104-05 (3d Cir. 2006) (per curiam). Where an offer-in-compromise is made prior to commencement of a collection due process ("CDP") hearing, the Internal Revenue Code expressly provides "for an independent administrative review of any rejection of a proposed offer in compromise or installment agreement made by a taxpayer." 26 U.S.C. § 7122(d). There is no provision for judicial review in a district court. Asemani, 163 F. App'x at 105. Instead, judicial review is only available where an offer-in-compromise has been tendered in the context of CDP proceedings, and even then, § 6330(d) provides for an appeal to the tax court, and then to the district court, in most instances. Id. In this case, there is no indication from the record that a CDP hearing occurred and there is no indication STA requested a hearing, as was its statutory right. Accordingly, STA failed to exhaust the administrative process and the Court lacks jurisdiction to review the denial. See id.

The Court has already concluded that the levy is valid. All that is left for the Court to determine is whether STA has the right to direct allocation of the funds to offset its most recent tax deficiencies.

The United States contends that the Court lacks jurisdiction to declare STA's rights in this manner. STA first asked the Court to direct specific allocation of the payments. (ECF No. 18.) After the United States raised the jurisdictional issue, STA revised its request and asked the Court to find it has the right to direct allocation. (STA Letter Br. at 5 (Oct. 28, 2010).) This request still asks the Court to declare STA's rights, which constitutes declaratory relief, and the Court likely lacks jurisdiction to issue declaratory relief with respect to federal taxes. See 28 U.S.C. § 2201(a) (empowering court to "declare the rights and other legal relations of any interested party seeking such declaration," but not "with respect to Federal taxes").

In the interest of judicial economy, and assuming the Court has jurisdiction, there is nevertheless no merit to STA's position.

Taxpayers may designate application of tax payments that are voluntarily made, but may not designate application of involuntary payments. United States v. Pepperman, 976 F.2d 123, 127 (3d Cir. 1993). Involuntary payments have been traditionally defined as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor." Id.; see Theodore A. Pride & Assocs. v. United States, No. 97-0762, 2001 WL 177064, at *5 (E.D. Pa. Jan. 18, 2001) (Weiner, J.) (noting that payments received as result of a levy are considered involuntarily made).

Voluntariness is to be contrasted with situations in which actions by creditors leave

debtors with no realistic choice but to make a payment. Stevens v. United States, 49 F.3d 331, 334 (7th Cir. 1995). The issue of voluntariness is determined along a continuum, it is an issue of more or less promptness in payment of taxes before the full coercive machinery of collection is brought to bear. Id. But the fact that a taxpayer's action in paying a portion of taxes owed confers a benefit on the IRS is not by itself sufficient to prove the taxpayer was acting voluntarily, especially when the "voluntary" act comes only days before an involuntary act, the threat of which compelled the taxpayer to turn "volunteer" to minimize its tax liability. Id. at 335; see Freck v. IRS, 37 F.3d 986, 991, 994 (3d Cir. 1994) (finding payment voluntary despite year-old outstanding lien, but no indication legal proceedings commenced); Interfirst Bank of Dallas, NA v. United States, 769 F.2d 299, 306 (5th Cir. 1985) (finding threat to levy, with no levy, does not render payment involuntary); Pullman Constr. Indus. v. United States (In re Pullman Constr. Indus.), 186 B.R. 88, 96 (Bankr. E.D. Ill. 1995) (stating payments are not involuntary when IRS takes slightest bit of action, such as filing a claim or phoning and writing to inform taxpayer of liability).

STA would not have the right to direct allocation as a matter of law because the payments are not voluntary. STA relies on correspondence its counsel sent to the IRS in February 2010 relating counsel's efforts to obtain money from PHA and his intent to forward payment to the IRS. (ECF No. 26, Ex. A.) STA argues this letter indicates its payment is voluntary because the United States did not initiate legal proceedings to collect until June 2010, when it first filed the § 7403 lien foreclosure suit.

The $104,000 subject to the levy is not voluntary. See Theodore A. Price & Assocs., 2001 WL 177064, at *5 (noting that payments received as result of a levy are considered

involuntarily made). Nor can the remaining $28,000 be considered voluntary. Stevens advocates considering voluntariness on a spectrum of more or less prompt and, in this case, the payment of $28,000 is clearly less prompt. 49 F.3d at 334. Although voluntariness is generally a factual issue, see Stevens, 49 F.3d at 335, there is no genuine dispute of material fact in this case.

STA has not paid its tax deficiencies, regardless of its assertion of intent to pay before the United States filed its lien-foreclosure action. There is also no dispute that STA has tax delinquencies in nearly every quarter from 2000 through 2009, (see ECF No. 26, Ex. G (listing tax deficiencies through December 31, 2009)), and the IRS is attempting to collect taxes from 2000 through 2003, (see ECF No. 10-1 ¶ 1). Thus, STA's "payment" of $28,000 is, at minimum, almost seven years late and at most, almost ten years late. Such tardiness cannot be considered anywhere near the "more prompt" end of the spectrum. Moreover, the United States had to levy a portion of the funds in October 2008 before STA finally "volunteered" to pay nearly sixteen months later. For these reasons, STA's Cross-Motion for Summary Judgment (ECF No. 18) will be denied.

### E. Is PHA Entitled to Dismissal?

PHA seeks permission to deposit the funds with the Court and for dismissal of all claims against it. Because the United States is entitled to the full $132,000, the Court will instruct PHA to pay these funds to the United States forthwith, rendering this portion of PHA's Motion moot. With no further interest in this matter, PHA's request for dismissal (ECF No. 11) will be granted.[5]

---

[5] In its Motion, the United States only requested the Court to enforce the levy (ECF No. 10-1 at 5); the United States did not seek the imposition of costs or interest pursuant to 26 U.S.C. § 6332(d)(1) for PHA's failure to pay.

## VI. Conclusion

For the foregoing reasons, the Court concludes that the United States is entitled to all $132,000, which it may allocate to STA's tax deficiencies in a manner the United States deems appropriate. The United States's levy attached to $104,000 of the funds, and the remaining $28,000 is subject to the foreclosed lien. This payment is not voluntary and, therefore, STA has no right to direct allocation of the funds.

Accordingly, the United States's Motion (ECF No. 10) will be **granted**, PHA's Motion (ECF No. 11) will be **granted** in part and **denied** in part, and STA's Cross-Motion (ECF No. 18) will be **denied**. An appropriate Order will follow.

O:\Todd\10-1511 PHA v. STA v. US\PHA MSJ Memo - draft 7.wpd